How and Company, et al. Chicago Flower Growers, Inc., Appellee, v. City of Chicago, Appellant.

**Gen. No. 41,141.**

572

Opinion filed October 1, 1940.
Rehearing denied October 21, 1940.

BARNET HODES, CORPORATION COUNSEL, for appellant; WALTER V. SCHAEFER and ROBERT J. NOLAN, Assistant Corporation Counsel, of counsel.

LEONARD C. MEAD, of Geneva, and HOWARD B. BRYANT, of Chicago, for appellee; TOLMAN & MEGAN, of Chicago of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Petitioner owns five City of Chicago Special Assessment Bonds, Nos. 11607 to 11611. The issue and payment of such bonds are provided for in the Local Improvement Act and amendments thereto (Ill. Rev. Stat. 1939, ch. 24, pars. 698–819, pp. 547–584 [Jones Ill. Stats. Ann. 76.003–76.138]). The act in its various sections makes the city of Chicago trustee for the levy, collection and distribution of the special assessments on which alone the holders of the bonds must rely for payment. In *Rothschild v. Village of Calumet Park,* 350 Ill. 330 (opinion filed October 22, 1932), at page 340, the Supreme Court held:

"It became the duty of the village, as such trustee, to pay the funds so collected from each of the several installments of each assessment in pro rata proportion upon each of the bonds, respectively, issued against the several installments; . . ."

June 19, 1936, the Chicago Flower Growers, Inc. and other plaintiffs filed their suit in equity for an accounting against the city of Chicago, and June 8, 1938, a decree was entered finding as to the bonds that "the maturity dates, face values and numbers thereof, together with the sums of money collected and appli-

cable to such bonds, the payments made thereon, and the respective principal and interest amounts due thereon upon a pro rata basis, were as follows:

| "S. A. No. | Installment | Maturity | Par | Number | Collected to 12-1-37 | Paid | Principal Due | Interest Due |
|---|---|---|---|---|---|---|---|---|
| 52345 | 3 | 1931 | 1000 | 11607 | 616.59 | 160.00 | 460.00 | 140.74 |
| | " | " | 1000 | 11608 | 616.59 | 160.00 | 460.00 | 140.74 |
| | " | " | 1000 | 11609 | 616.59 | 160.00 | 460.00 | 140.74 |
| | " | " | 1000 | 11610 | 616.59 | 160.00 | 450.00 | 140.74 |
| | " | " | 1000 | 11611 | 616.59 | 160.00 | 460.00 | — ." |

The decree entered judgment in favor of Chicago Flower Growers, Inc. and against the city in the amounts set forth in the column headed "Principal Due." The decree also found: "It Is Further Ordered, Adjudged and Decreed by the Court, that the said respective bonds so held by said respective plaintiffs shall remain outstanding as a valid and subsisting obligation of the City of Chicago to the extent of the balance of the face value thereof of said bonds over and above the amount for which this decree is entered herein, and shall remain payable with interest thereon from funds collected and received by said City of Chicago on account of and as the proceeds of the first installment and other installments or supplemental assessments allocable to the payment thereof, subsequent to the collections accounted for in this proceeding.

"It Is Further Ordered, Adjudged and Decreed by the Court, that any bonds not wholly cancelled by this judgment may be partially cancelled by having endorsed upon them in substance the words and figures as follows, to-wit:

" 'Partial payment made by judgment and decree of the Superior Court of Cook County, Illinois, Case No. 34S9040, for the sum of $——.' " The court also retained jurisdiction to enforce the terms of the decree.

July 11, 1939, Chicago Flower Growers, Inc. filed its petition asserting its ownership of the bonds and the rendition of the decree of June 8, 1938. It asserted the decree of June 8 found that as of December 1, 1937, petitioner was entitled, as its pro rata share of collections, to a payment on each of the bonds amounting to 61.659 per cent, or $616.59 on each bond; that prior to that date there had been paid on each bond the sum of $160, and there was still due and owing as its pro rata share of collections to December 1, 1937, the sum of approximately $460 on each bond; that judgment was accordingly entered against the city and in favor of petitioner on each of the bonds in an amount equal to the difference between the amount paid on the bonds and petitioner's pro rata share of collections due December 1, 1937. It was averred in paragraph 4 that since the entry of the decree the city had collected moneys on the 1931 instalment of Warrant No. 52345, and held $413 applicable to the principal of the third instalment of the warrant, any portion of which it had failed to pay.

The petition prayed an order directing the city of Chicago to disburse this $413 and in making the disbursement to calculate the pro rata payments applicable to petitioner's bonds "without regard to the endorsement of judgment made on said bonds pursuant to said decree, but to pro rate to all outstanding bonds on their original par value."

The city answered admitting collection of the $413; the entry of the decree of June 8; that the money should be distributed pro rata, but said, "The pro rata share applicable to the payment of each bond is the proportion of the principal amount of such bond which the total amount of monies collected on account of the warrant and installment bears to the total amount of obligations issued against said warrant and installment." The answer of the city also averred that where a judgment had been entered upon a bond, "the judg-

ment must be considered as payment in determining the share of the money subsequently collected which is applicable to such bonds. And in so far as the judgment which has been entered with respect to any bonds, plus money available for payment, exceeds the pro rata share of total collections applicable to such bonds, the excess should be applied in satisfaction of said judgment.''

The matter was heard upon the petition and answer and upon a stipulation of the parties. The stipulation provided that the bonds originally issued to anticipate the collection of the third instalment of Special Assessment Warrant No. 52345, together with amounts applied in payment of the bonds and vouchers prior to December 31, 1932, were as follows:

| Bond | Bonds and Vouchers Issued | Payments |
|---|---|---|
| G–11598 | $ 1,000.00 | $1,000.00 |
| G–11599 | 1,000.00 | 1,000.00 |
| 11600 | 1,000.00 | 1,000.00 |
| 11601 | 1,000.00 | 1,000.00 |
| 11602 | 1,000.00 | 1,000.00 |
| 11603 | 1,000.00 | 1,000.00 |
| 11604 | 1,000.00 | 1,000.00 |
| 11605 | 1,000.00 | 1,000.00 |
| 11606 | 1,000.00 | 1,000.00 |
| 11607 | 1,000.00 | |
| 11608 | 1,000.00 | |
| 11609 | 1,000.00 | |
| 11610 | 1,000.00 | |
| 11611 | 1,000.00 | |
| K–212 | 300.00 | 130.00 |
| M–908 | 500.00 | 500.00 |
| Voucher 3646 ........ | 46.98 | 46.98 |
| Total issue ........... | $14,846.98 | |

It was stipulated that prior to December 1, 1937, $160 had been paid on each of the bonds owned by petitioner; that June 8, 1938, judgment was entered against the city on each of the bonds for $460; that since December 1, 1937, there had been collected on the third

instalment Special Assessment Warrant No. 52345, the sum of $413.34, which was available for distribution. The court entered an order finding the above facts and that the city had failed to pay any portion of the $413.34 upon petitioner's bonds. The order found that under the terms of the decree of June 8, "it became and is the duty of the City of Chicago and its officials to pro rate all moneys received in this installment upon all bonds outstanding in this installment, including the aforesaid bonds owned and held by the petitioner, and became and is the duty of the City of Chicago and its officials to calculate such pro rata payments applicable to petitioner's bonds without regard to the endorsement of the judgment made on petitioner's bonds pursuant to the decree of this court." From this order the city of Chicago appeals.

From the above recitals it is apparent the gist of the controversy is whether in computing petitioner's pro rata share of the undistributed fund the judgments as entered by the decree of June 8 shall be regarded as payment of the bond *pro tanto* to the amount of the judgment. The prayer of the petition is that the computation shall be made "without regard to the endorsement of judgment made on said bonds pursuant to said decree." The petitioner prays that the amount to be distributed shall be pro rated to all outstanding bonds on their original par value. The city contends the computation should be limited to the amount of obligations presently outstanding issued against the warrant and that in making the computation of the amount of money collected applicable to the bonds the judgment entered should be considered as payment; that if the judgment entered plus the money available for payment exceeds the pro rata share of total collections applicable to the bonds the excess only should be applied on the judgment.

The rules of law generally applicable have been stated in *Rothschild v. Village of Calumet Park,* 350 Ill.

330, 340; also in *People ex rel. Anderson v. Village of Bradley,* 367 Ill. 301, and in many other cases following these decisions. Under the provisions of the Local Improvement Act the city is trustee to collect the assessments for the benefit of the holders of the particular instalments of bonds, and the rules of law as to trusts are applicable. Distribution should be made equally and pro rata to holders of the bonds of a particular instalment issued against a particular warrant. *Siefker v. City of Chicago Heights,* 297 Ill. App. 113; *Bankers Life Co. v. Village of Elmwood Park,* 280 Ill. App. 524; *People ex rel. Wilmette State Bank v. Village of Wilmette,* 294 Ill. App. 362; Ill. Rev. Stat. 1939, ch. 24, pars. 777, 792, 799, 802, 803 [Jones Ill. Stats. Ann. 76.090, 76.106, 76.113, 76.116, 76.117]; *Scribner v. Village of Downers Grove,* 372 Ill. 614; *Village of Downers Grove v. Harley,* 372 Ill. 586.

Petitioner says the entry of the judgment does not affect the pro ration of funds collected after the judgment is entered. This contention is contrary to the decree, which petitioner, as plaintiff, procured to be entered on June 8, 1938. This decree directs the "respective bonds" shall remain outstanding "to the extent of the balance of the face value . . . over and above the amount for which this decree is entered." There follows the provision as quoted for partial cancellation, which may be accomplished by indorsement of the judgment and the decree on the bond. Petitioner, therefore, seems to be precluded by the decree entered on his own bill.

Petitioner argues the holder of a bond who has placed it in judgment should not be penalized for his diligence. The rule is invoked that equity aids the vigilant. It is not applicable here. Plaintiff by choice obtained a decree which in substance provides that a judgment entered shall amount to the equivalent of payment in so far as future collections are concerned. The legal effect of the judgment is to merge the obli-

gation on the bond into the judgment. The judgment gives to the holder of it further rights which the owner of a bond not in judgment does not possess, one of which is that by mandamus he can now compel the city to pay his claim. Equitably, we think, he should be compelled to use this method rather than to permit other holders of bonds to go unpaid. Another advantage possessed by a holder who has obtained a judgment for a part of his bond is that he may assign the judgment and also sell the bond. The briefs of the city state that this is not an unusual practice.

For these reasons we think the court erred in directing the computation to be made disregarding the judgments entered as payment *pro tanto*. The judgment will, therefore, be reversed and the cause remanded with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and McSURELY, J., concur.